IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANTHONY RODRIGUEZ,

        Plaintiff,

v.                                                                  No. CV-13-1033 CG

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Anthony Rodriguez's *Motion to Reverse or Remand Administrative Agency Decision* with the *Memorandum in Support of Plaintiff's Motion to Reverse or Remand Administrative Agency Decision* (together the "Motion"), filed on June 2, 2014, (Docs. 22, 23); Defendant's *Brief in Response to Plaintiff's Motion to Reverse and Remand for Rehearing* ("Response"), filed on August 6, 2014, (Doc. 24); and *Plaintiff's Reply to Defendant's Brief in Response to Plaintiff's Motion to Reverse and Remand for Rehearing* ("Reply"), filed on August 12, 2014, (Doc. 25).

On March 23, 2010, Mr. Rodriguez filed an application for social security disability insurance benefits and supplemental security income with the Social Security Administration, alleging disability beginning on March 8, 2010. (Administrative Record ("AR") 12, 140–43, 171–73). His application was denied on January 14, 2011, (AR 70–72, 74–78), and upon reconsideration on April 11, 2011. (AR 73, 81–83). Mr. Rodriguez filed his request for a hearing on April 15, 2011, (AR 84); a hearing was held on April 5, 2012, before Administrative Law Judge ("ALJ") Myriam C. Fernandez Rice. (AR 29–69).

Mr. Rodriguez and Cornelius Ford, an impartial vocational expert, testified at the hearing. *Id.* Mr. Rodriguez was represented by Patrick E. Hartley, a non-attorney representative, at the proceeding. *Id.*

The ALJ issued her opinion on April 27, 2012, and determined that Mr. Rodriguez was not disabled under 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 12–23). Mr. Rodriguez filed an application for review with the Appeals Council, which was summarily denied on August 29, 2013, (AR 1–5), making the decision of the ALJ the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Mr. Rodriguez complains that the Commissioner committed reversible, legal error by: (1) making a residual functional capacity finding unsupported by substantial evidence and the law because she failed to properly determine the limitations caused by all of his impairments; (2) adopting the vocational expert's testimony in error; and (3) making an adverse credibility finding in violation of the law.

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ rendered a residual functional capacity finding unsupported by substantial evidence, the Court finds that the Motion shall be **GRANTED** and the case shall be **REMANDED** for further proceedings.

I.   **Standard of Review**

The standard of review in a Social Security appeal is whether the final decision of the Commissioner of the Social Security Administration is supported by substantial evidence and the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093,

1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

## II.     Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits and supplemental security income, a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the sequential evaluation process, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) meet or equal one

of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). At the fifth step, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, in light of his residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.

### III.     Background

Mr. Rodriguez applied for disability benefits alleging that he was disabled due to a previous heart attack and thyroid, diabetic, pancreatic, and liver conditions. (AR 209).

At step one, the ALJ determined that Mr. Rodriguez had not engaged in substantial gainful activity since March 8, 2010. (AR 14). At step two, the ALJ concluded that Mr. Rodriguez was severely impaired with hepatitis C, diabetes mellitus, depression, pancreatitis, bilateral carpal tunnel syndrome, left-hand cellulitis resulting in skin amputation, and drug addiction. *Id*. The ALJ also found Mr. Rodriguez's alleged rheumatoid arthritis and lupus to be non-medically determinable impairments. (AR 14–15). At step three, the ALJ concluded that none of Ms. Rodriguez's impairments, solely or in combination, equaled one of the listed impairments in 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (AR 15–16).

The ALJ proceeded to step four, and first made an RFC finding that Mr. Rodriguez could perform medium work, as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that: (i) his gross manipulation was limited to only occasional fingering and

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

handling with his left hand and frequent fingering with the right hand; and (ii) he was limited to simple, routine and repetitive tasks. (AR 16–21). The ALJ decided that Mr. Rodriguez was precluded from doing any of his past relevant work in light of the RFC finding. (AR 21).

At step five, the ALJ inquired whether Mr. Rodriguez would be able to perform any other work existing in significant numbers in the national economy. (AR 21). The ALJ noted that Mr. Rodriguez was 36 years old on the alleged disability onset date, and therefore classified as a "younger individual" in accordance with the Regulations. (AR 21–22). The ALJ also determined that Mr. Rodriguez had at least a high school education and English-language skills. *Id.*

The vocational expert testified at the hearing that an individual with Mr. Rodriguez's same age, education, work experience, and RFC could perform the jobs of potato chip sorter, garment sorter, and cannery worker. (AR 57–58). The vocational expert stated that those jobs existed in significant numbers in the national economy. *Id.* After finding the vocational expert's testimony to be consistent with the Dictionary of Occupational Titles, the ALJ adopted her testimony. (AR 22).

The ALJ concluded that because Mr. Rodriguez was capable of performing work existing in significant numbers in the national economy, he was not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g).

**IV.   Analysis**

Mr. Rodriguez contends that the ALJ committed error by formulating an RFC determination unsupported by substantial evidence and the law, because the ALJ failed to properly evaluate his upper-extremity impairments, obesity, diabetes, rheumatoid

arthritis, lupus, and hepatitis C, and by failing to properly develop the record as to his functional limitations. He also argues the ALJ committed reversible error at step five because the vocational expert did not account for all of Mr. Rodriguez's limitations, or reconcile conflicts between the vocational expert's testimony and the Dictionary of Titles. He further maintains that the ALJ's adverse credibility finding is flawed because it was not affirmatively linked to substantial evidence in the record.

The Commissioner responds that the ALJ's RFC finding is supported by substantial evidence and not legally erroneous. The Commissioner maintains that the ALJ's duty to develop the record was not triggered, and it was Plaintiff's burden to submit medical evidence of the severity and limiting effects caused by his impairments. The Commissioner also argues that the ALJ assessed appropriate RFC limitations, and therefore the vocational expert's testimony supports the ultimate finding of disability. Last, the Commissioner contends that the ALJ properly assessed Plaintiff's credibility. The Commissioner asks the Court to affirm the final decision denying disability benefits.

  A. *Mr. Rodriguez's Challenges to the RFC Finding*

Mr. Rodriguez argues that, when the ALJ determined his residual functional capacity, she did not consider all of the evidence or properly develop the record regarding his upper-extremity impairments, obesity, diabetes, rheumatoid arthritis, lupus, and hepatitis C. Mr. Rodriguez contends that there is evidence of his various impairments throughout the record that necessitate a more restrictive RFC finding. He additionally argues that the ALJ should have ordered a consultative examination in order to properly analyze the limitations imposed by his carpal tunnel syndrome and cellulitis and partial left-hand amputation. Therefore, Mr. Rodriguez concludes that the ALJ

rendered an RFC finding that is unsupported by substantial evidence and the law.

The Commissioner responds that the ALJ did not commit legal error, because the ALJ properly evaluated the record evidence, and therefore more stringent limitations are not required. The Commissioner also argues that the ALJ did not breach his duty to develop the record, and that even if she did, such error would be harmless.

### 1.   *Upper-Extremity Impairments: Fingering and Handling Limitations*

The Court first addresses Mr. Rodriguez's challenge to the ALJ's RFC finding associated with his upper-extremity impairments. Mr. Rodriguez contends that the ALJ did not make proper findings of the functional limitations resulting from his carpal tunnel syndrome and his cellulitis which led to the partial amputation of his left hand.

The RFC finding is a function-by-function assessment, based on how the claimant's functional physical and mental limitations, resulting from his impairments, affect his ability to work. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* Social Security Rulings ("SSR") 96-8p, 1996 SSR LEXIS 5, *2, 8. The RFC represents the claimant's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, meaning eight hours a day for five days a week, or an equivalent work schedule. *Id.*, at *5. The RFC is based on all relevant evidence in the record, including information about the individual's symptoms, reports of daily activities, lay evidence, medical history, medical signs and laboratory findings, and any medical source statements submitted by a treating or other acceptable medical source. *Id.*, at *5–6, 13–14. The ALJ also considers any statements about what the claimant can still do that have been provided by medical sources, whether or not they are based on formal medical examinations, see 20 C.F.R. §§ 404.1513 and 416.913, and

any descriptions and observations of the claimant's limitations, including pain, provided by the claimant. 20 C.F.R. §§ 404.1545(e), 404.1529(c), 416.945(e), 416.929(c).

The ALJ limited Mr. Rodriguez to occasional[1] handling and fingering with the left hand, and frequent[2] fingering with his right hand. In assigning those limitations, she explained that she had given "[Mr. Rodriguez] the benefit of the doubt, combined with his left hand issue in February 2012, which may or may not be present for 12 months." (AR 20). The ALJ declined to assign more restrictive gross manipulation limitations because: (i) Mr. Rodriguez had not undergone surgery for his carpal tunnel syndrome and wore wrist braces for the condition; (ii) the record contained "very little" medical documentation of Mr. Rodriguez's carpal tunnel syndrome; and (iii) Mr. Rodriguez failed to submit medical evidence of the limitations likely to result from his partial left-hand amputation. (AR 20).

The Court will first consider all of the record evidence of Mr. Rodriguez's upper extremity impairments before addressing Mr. Rodriguez's challenge to the RFC finding.

*2.  Evidence of Upper-Extremity Impairments and Functional Limitations*

The record reveals that Mr. Rodriguez suffered from recurring bouts of cellulitis in both hands, although the ALJ only found him to be severely impaired by cellulitis in the left hand. On October 31, 2010, Mr. Rodriguez presented to the emergency room afflicted with cellulitis of his right hand. (AR 497). He stayed at the hospital for three days, and was treated with a course of antibiotics. *Id.* One month later, Mr. Rodriguez visited the emergency room for right elbow and hand pain. (AR 530). His right hand

---

[1] "Occasionally means occurring from very little up to one-third of the time." SSR 83-10, 1983 LEXIS 30, *13.
[2] "Frequent means occurring from one-third to two-thirds of the time. *Id.*, at *14.

8

appeared red, swollen, and tender, and he was again diagnosed with cellulitis and prescribed a regimen of antibiotics. (AR 524, 533).

Mr. Rodriguez was treated for an injury to his left hand that occurred on February 11, 2012, allegedly after his hand was struck during a fight over a gun with his girlfriend.[3] (AR 597). He was initially treated for a broken hand, and given a splint at the emergency room. *Id.* However, a review of the x-ray film from his emergency room visit revealed no dislocation, and only a highly remote fracture. (AR 598, 673).

On February 27, 2012, Mr. Rodriguez was transferred to an out-of-state medical facility to seek a higher level of care for the injury. (AR 673). He had an open purulent wound of his left upper extremity. (AR 676). While his entire left arm appeared massively swollen and he had associated lymphangitis through the mid-forearm, he was able to flex and extend his left hand without difficulty. (AR 676–77). Mr. Rodriguez did not complain of any sensation or other problems in his fingers, and there was no evidence of any ischemia in his fingers or sensitivity abnormalities. *Id.* Mr. Rodriguez was diagnosed with gross infection of the left upper extremity. (AR 679–88). He underwent incision and debridement of the left hand wounds and liquefaction on February 28, 2012 and March 3, and was provided a short arm splint. *Id.* The surgeon opined that Mr. Rodriguez's hand had suffered significant damage, and full amputation of the hand to the wrist and complete loss of the function of his left hand and arm were possible. (AR 682, 684–85, 687–88). Mr. Rodriguez was subsequently discharged and prescribed antibiotics for left-hand cellulitis. (AR 687–88).

The record also contains medical evidence of Mr. Rodriguez's bilateral carpal

---

[3] At the hearing, Mr. Rodriguez testified that this injury was caused when he took away a BB gun from his children, who were fighting over it with their mother. (AR 48). The ALJ found the inconsistency to adversely affect Mr. Rodriguez's credibility. (AR 20).

tunnel syndrome. On August 31, 2011, Mr. Rodriguez complained of pain in the joints of his hand to Linda Sims, a nurse practitioner; she ordered him to undergo a nerve conduction study.[4] (AR 593–94). He underwent the study on September 1, 2011, which revealed distal motor latency ("DML") and compound muscle action potential ("CMAP") amplitudes outside of the normal limits in his left- and right-median wrists. (AR 689). The study also showed the F wave in his right-median wrist to be outside of normal limits, and sensory response to be absent in both wrists. *Id*. The diagnostician determined that Mr. Rodriguez likely suffered from severe left- and right-median neuropathy, or carpel tunnel syndrome, in both wrists. (AR 689–90). The results of the study did not reflect the degree of functional limitation, if any, imposed by Mr. Rodriguez's carpal tunnel syndrome.

On September 12, 2011, Mr. Rodriguez saw Ms. Sims to discuss the results of the nerve conduction study. (AR 591–92). She noted that the nerve conduction study indicated severe carpal tunnel syndrome, and prescribed Mr. Rodriguez splints for both wrists to be worn at night. *Id*. She also prescribed him hydrocodone for the condition and referred him to a specialist for additional treatment. *Id*. Several weeks later, Ms. Sims prescribed Nuerontin,[5] (AR 592), and increased his dosage twice over the following three months. (AR 583, 586).

The record also contains Mr. Rodriguez's subjective complaints of the effects of

---

[4] The Commissioner argues that Ms. Sims' medical notes should be disregarded, because as a nurse practitioner she was not an acceptable medical source under the Regulations, and therefore her treatment notes cannot be used to establish disability. See 20 C.F.R. §§ 404.1513(a), 416.913(a). The Court is not persuaded by this argument, because opinions from non-acceptable medical sources, such as nurse practitioners, are important in determining the severity and limiting effects of a properly-diagnosed condition. SSR 06-03p, 2006 SSR LEXIS 5, *4–5. Further, the ALJ actually considered and accepted some of Ms. Sims' findings and did not reject them outright as urged by the Commissioner.

[5] Neurontin is the trade name under which gabapentin is sold, and commonly used to treat forms of mononeuropathy, such as carpal tunnel syndrome. Nat'l Insts. of Health, *Gabapentin*, MEDLINEPLUS (July 15, 2011), http://www.nlm.nih.gov/medlineplus/druginfo/meds/a694007.html; *see also* Nat'l Insts. of Health, *Mononeuropathy*, MEDLINEPLUS (Aug. 28, 2012), http://www.nlm.nih.gov/medlineplus/ency/article/000780.htm.

his upper-extremity impairments on his functioning. At the April 5, 2012 hearing, which was approximately one month after the partial amputation of his left hand, Mr. Rodriguez described the debridement procedure to the ALJ. He explained that approximately two inches of flesh had been cut from his left palm. (AR 35, 47). During the hearing his hand was still wrapped in bandages and healing. (AR 47–49). The ALJ questioned him about whether he would need ongoing therapy, and Mr. Rodriguez responded that he had not scheduled therapy yet and that his physicians did not know whether amputation of the entire hand would be necessary. (AR 35, 38). He also did not know whether plastic surgery would be performed on his left hand. (AR 48, 49).

      Mr. Rodriguez also testified about the effects of his carpal tunnel syndrome. He stated that he uses a brace for the condition, his hands cramp up and are constantly numb, and that he has no feeling in his arms and elbows. (AR 38–39, 41, 42). He explained that he has difficulty picking up and manipulating both small and large objects because of hand numbness and constant pain, and that he cannot hold a coffee cup or a wrench because he has no use of his fingers or fingertips. (AR 38–39, 45, 46). When asked by the ALJ, he confirmed that he had not undergone surgery for his carpal tunnel syndrome. (AR 39).

      Mr. Rodriguez stated that he had no feeling in the tip of his fingers or in his palm, no use of his "pinky" finger or his palm "because the nerves are pushed over," and his left hand "just hangs there." (AR 38, 49). He claimed that his hand and arm numbness, pain, and cramping prevented him from being able to lift more than two pounds. (AR 40). He scored his hand pain as an eight on a pain scale of zero through 10. (AR 41). He also claimed to have difficulty getting out of bed due to the pain in his hands. (AR 44).

### 3.     *Substantial Evidence Does Not Support the RFC Finding*

Mr. Rodriguez contends that the ALJ's RFC finding is unsupported by substantial evidence and erroneous. Primarily, he argues that the ALJ did not explain what evidence supports the fingering and handling limitations she assigned, and that her reasoning relies impermissibly on an alleged absence of evidence of his functional limitations. He further contends that the ALJ improperly interpreted raw medical data in drawing her RFC conclusions.

The ALJ is required to make specific RFC findings that are supported by substantial evidence. *Weigel v. Astrue*, 425 Fed. Appx. 706, 708 (10th Cir. 2011) (quoting *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) and *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999)). The ALJ must include a "narrative discussion" that demonstrates how the evidence supports each functional limitation she assigns, citing to specific medical facts and nonmedical evidence, and explaining how material inconsistencies or ambiguities in the evidence in the record were considered and resolved. 96-8p, 1996 SSR LEXIS 5 at *19.

The ALJ restricted Mr. Rodriguez in fingering and handling because she was giving his testimony "the benefit of the doubt," coupled with the circumstances of his partial left-hand amputation. (AR 20). The Court is baffled by this explanation, given the ALJ's subsequent adverse credibility finding of Mr. Rodriguez's testimony several paragraphs later in her decision. (AR 20).

Mr. Rodriguez's testimony indicates that he had an almost total loss of functioning in both of his upper extremities. Thus, the Court cannot find that the ALJ demonstrated how this testimony, which she gave "the benefit of the doubt," supports her finding that

Mr. Rodriguez can occasionally finger and handle with the left hand, and frequently finger with the right hand. Had the ALJ given Mr. Rodriguez's testimony credence as she stated, then far more restrictive limitations in those areas would be expected.

The parties agree that the record is bereft of medical evidence regarding Mr. Rodriguez's functional limitations in gross manipulation. Mr. Rodriguez posits that, in the absence of any RFC assessment of his fingering and handling abilities by a medical source, the ALJ must have improperly interpreted raw medical data to formulate the RFC in those areas. He directs the Court to authority outside of the Tenth Circuit that the ALJ, as a lay person, may commit reversible, legal error by interpreting raw medical data into functional terms. *See Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996); *see also Castle v. Colvin*, 557 Fed. Appx. 849, 854 (11th Cir. 2014); *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000) (noting that the ALJ should have elicited the testimony of a medical expert instead of "play[ing] doctor."). While those cases are not binding on this Court, the reasoning supporting the rule is instructive.

In this case, the Court cannot find that Mr. Rodriguez's functional impairments were so mild as to make it obvious to a layperson the extent of his fingering and handling abilities. *See Manso-Pizarro*, 76 F.3d at 18–19. Therefore, the record "require[d] more than a layperson's effort at a commonsense functional capacity assessment." *Id.*, at 19.

The Commissioner maintains that other evidence controverts Mr. Rodriguez's testimony. The Commissioner points out that none of Ms. Sims' treatment reports reflect any abnormal clinical manifestations, such as sensory and motor deficits or atrophy from disuse. Further, when Mr. Rodriguez was treated for a laceration to his right hand in October, 2010, the attending physician noted that his wrists were non-tender, that he had

normal range of motion and function, and no vascular compromise. (AR 495). The next day his physician observed that Mr. Rodriguez had normal flexor tendon function in his hand. (AR 504). On December 1, 2010, Mr. Rodriguez was treated in the emergency room for right-hand cellulitis; the physician observed him to have generally normal sensation and motor function. (AR 530–33).

However, the ALJ did not explain how she resolved any inconsistencies between those treatment notes and Mr. Rodriguez's testimony. The ALJ stated that she gave Mr. Rodriguez's testimony the benefit of the doubt, particularly regarding his carpal tunnel syndrome and partial left-hand amputation. The Court may not stray from the four corners of the decision, and must evaluate the ALJ's decision based solely on the reasons stated therein; it is impermissible for the Court to engage in *post hoc* rationalization. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084–85 (10th Cir. 2004). Therefore, the Court finds the Commissioner's argument unpersuasive.

The Court cannot find that the ALJ established the required nexus between the record medical evidence and her RFC conclusions regarding Mr. Rodriguez's capacity to finger and handle. Thus, the ALJ did not sufficiently set forth how the relevant evidence supported her RFC conclusions in the areas of fingering and handling, and therefore failed to meet the standards required by law.

To be sure, the Court will also look to the ALJ's purported reasons for not ascribing more restrictive limitations from Mr. Rodriguez's upper-extremity impairments.

  4. *Carpal Tunnel Surgery and Symptom Management*

The ALJ explained that she would not assign more restrictive limitations resulting from Mr. Rodriguez's bilateral carpal tunnel syndrome because he had not undergone

carpal tunnel surgery and wore wrist braces for the condition.

Mr. Rodriguez contends that he has not undergone carpal tunnel surgery because he has not been identified as a surgical candidate, and that he has not sought an expert consultation due to financial considerations. (AR 265). The Commissioner responds that Plaintiff's failure to present himself for a consult with a specialist suggests that his carpal tunnel syndrome was not as severe as he alleged, and therefore his claims of pain were less credible. However, the ALJ did not discuss whether Mr. Rodriguez's failure to seek out a consult factored into her RFC determination. She also did not state that his failure to have surgery discredited his allegations of pain. Further, neither the Commissioner nor the ALJ point to any evidence demonstrating that Mr. Rodriguez was a surgical candidate or that surgery could alleviate his symptoms. Therefore, the bare fact that Mr. Rodriguez has not undergone surgery has "little logical relation" to Mr. Rodriguez's RFC. *See Maynard v. Astrue*, 276 Fed. Appx. 726, 733 (10th Cir. 2007).

Based on the evidence, the Court cannot infer that the mere fact Mr. Rodriguez wears wrist braces means that his carpal tunnel syndrome is well-managed, and warranted a less restrictive RFC finding. To the contrary, Mr. Rodriguez described constant numbness and pain in both of his hands and arms due to carpal tunnel syndrome. There is no objective medical evidence demonstrating that Mr. Rodriguez's condition was well-controlled by wearing wrist braces. Ms. Sims' treatment notes show that she increased his dosages of Neurontin and hydrocodone after prescribing the braces. Therefore, in light of all of the evidence, the Court cannot find that Mr. Rodriguez's use of assistive devices provides the necessary evidentiary support for the ALJ's RFC finding.

*5.  Insufficiency of the Evidence in the Record*

The ALJ also declined to assign more restrictive functional limitations in fingering and handling on the basis that there was little medical documentation of Mr. Rodriguez's carpal tunnel syndrome or the limitations that would result from his partial left-hand amputation. Mr. Rodriguez concedes that the record does not contain any objective medical evidence or opinions about his ability to finger or handle. He contends that the ALJ should have developed the record as to his impairments, and explains that he was unable to obtain a medical source statement concerning the severity of his left-hand impairments within the two-week deadline.[6] Specifically, he maintains that the ALJ should have ordered a consultative examination to assess those limitations. He argues that, had the ALJ properly developed the record, material evidence may have been revealed that would have allowed him to succeed on his claim.

The Commissioner responds that the ALJ was not required to develop the record any further, and that it was Mr. Rodriguez's burden to demonstrate that his functional limitations and disability endured for at least 12 consecutive months, which he failed to do.

Generally, the claimant bears the burden of furnishing all evidence to the ALJ that can be used to reach conclusions about his medical impairments, their severity, and their effect on his ability to work on a sustained basis. 20 C.F.R. §§ 404.1512, 416.912. However, the ALJ also has a responsibility to develop a claimant's complete medical history for the relevant disability period, and make every reasonable effort to acquire medical reports from a claimant's medical source. 20 C.F.R. §§ 404.1512(d), 416.912(d).

---

[6] During the hearing, the ALJ asked Mr. Rodriguez to provide proof of any limitations that would follow from his partial left-hand amputation within two weeks of the hearing date. (AR 68).

The ALJ is responsible for ensuring that an adequate record is fully and fairly developed consistent with the material issues raised, *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997), and there is enough evidence to make a proper analysis of the claimant's physical and mental limitations or restrictions. 20 C.F.R. §§ 404.1513, 416.913; SSR 96-8p, 1996 SSR LEXIS 5 at *14. The duty is particularly acute where the claimant is unrepresented at the hearing, or is represented by a non-attorney, as was the case here. *Miracle v. Barnhart*, 187 Fed. Appx. 870, 874 (10th Cir. 2006).

When evidence is inconsistent or inconclusive the ALJ has discretion to develop the record by re-contacting a treating physician to seek additional evidence or clarification, requesting additional existing records or additional information, or ordering a consultative examination. 20 C.F.R. §§ 404.1520b, 416.920b. The ALJ should develop the record "through careful questioning, and by obtaining the services of a consultative examiner when necessary." *Miracle*, 187 Fed. Appx. at 874. The ALJ may also develop the record "by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Id.* (quotation omitted). "Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone." SSR 96-8p, 1996 SSR LEXIS 5 at *14. The duty is not a panacea for claimants that requires reversal in any matter where the ALJ fails to exhaust every potential line of questioning. *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994). "The standard is one of reasonable good judgment." *Hawkins*, 113 F.3d at 1168.

Mr. Rodriguez contends that a sufficient quantum of evidence was in the record to raise an issue of material fact regarding his limitations in the areas of handling and

fingering. It is undisputed that there are objective medical findings and evidence that Mr. Rodriguez suffered from severe carpal tunnel syndrome and cellulitis since the date of onset. Both parties also agree that there is limited or no record evidence concerning his functional limitations resulting from those impairments, aside from Mr. Rodriguez's own testimony.

The Court finds that under these circumstances, Mr. Rodriguez raised a material issue of fact as to the ultimate finding of disability that the ALJ failed to fully and fairly develop. After acknowledging the insufficiency of the record evidence during the hearing, she asked Mr. Rodriguez to obtain an RFC assessment from his surgeon or treating physician and submit that evidence to her within two weeks' time. Pursuant to the Regulations, she should have re-contacted Mr. Rodriguez's medical providers to seek additional evidence or clarification, requested additional existing records or additional information, or ordered a consultative examination. Therefore, the ALJ did not properly fulfill her duty to develop the record.

To the extent there is very little medical evidence directly addressing Mr. Rodriguez's RFC in those areas, the ALJ made unsupported findings concerning his functional abilities. Thus, without evidence supporting her findings, the ALJ was "not in a position to make an RFC determination." *Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 740 (10th Cir. 2007).

Mr. Rodriguez's ability to handle and finger affects the ultimate disposition of his claim. Fingering and handling "require progressively finer usage of the upper extremities to perform work-related activities." SSR 85-15, 1985 SSR LEXIS 20, *18–19. Fingering involves picking, pinching, or otherwise working primarily with the fingers, and is needed

to perform most unskilled sedentary jobs and to perform certain skilled and semiskilled jobs at all levels of exertion. *Id.*, at *19. Handling activities involve seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands, and are required in almost all jobs. *Id.* Significant limitations of fingering or handling, therefore, may eliminate a large number of occupations a person could otherwise do. *Id.*

All three of the jobs the vocational expert determined Mr. Rodriguez could perform require the ability to do at least occasional fingering and handling. (AR 22). More restrictive functional findings in the areas of fingering and handling would require the assistance of a vocational expert to determine what jobs, if any, Mr. Rodriguez could perform. *See* SSR 85-15, 1985 SSR LEXIS 20 at *19–20. Therefore, the Court must find that the ALJ's error in making the RFC finding was not harmless.

## V.     Conclusion

The ALJ's RFC assessment in this case was not based on substantial evidence, and therefore the Court will remand the case to the Commissioner for further administrative proceedings. The omission constitutes substantial legal error necessitating a remand for further proceedings consistent with the discussion herein. Although the current state of the record suggests that a consultative exam may be necessary, the Court leaves the decision of whether to order a consultative exam up to the ALJ. *Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006). On remand, the ALJ should consider obtaining updated medical records from Mr. Rodriguez's doctors, or a detailed evaluation from a consulting doctor who personally examines him. *See Fleetwood*, 211 Fed. Appx. at 741. The Court does not decide any other issue raised by Mr. Rodriguez on appeal, as these matters are mooted by the proceedings conducted or

the disposition reached on remand.

**IT IS THEREFORE ORDERED** that Mr. Rodriguez's *Motion to Reverse or Remand Administrative Agency Decision*, (Doc. 22), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE